May it please the Court, Suzelle Arellano on behalf of Petitioner Michael Mullicane, I'd like to reserve two minutes of my time for rebuttal. Sure. On July 25th, 2005, the Glendora Police Department came to Mr. Mullicane's home, arrested him, and took him to jail. The actions that the Glendora Police took on that night constituted intentional actions designed to mislead Mr. Mullicane into believing that he had no choice but to speak to the police without his counsel, who he had already retained. The actions that the police took were that although his counsel had sent them a letter telling them that he was representing Mr. Mullicane and that Mr. Mullicane should not be interviewed outside of his presence, the police ignored that letter. Do they have a duty to follow the letter? I understand the rule is that the defendant has to personally invoke the right to counsel. Yes, Your Honor. However, here you're looking at under coercion, you're looking at the totality of the circumstances, and what I'm trying to tell the Court is that the totality of the circumstances in this case show that Mr. Mullicane's will was overborn because of the actions that the police took. Because it was not just the ignoring of the letter, it was that once he arrived at the jail, he intended to call his attorney when he saw that there was a sign that said he would call his attorney, but when he requested calls, he was told that he could not make any calls, and that this denial was of the direction of the detective in this case, Detective Henderson. He was then held incommunicado until the police officer decided to come to interrogate him. When he came, he read him his Miranda rights, but did not obtain a waiver from him until after the interview was over. During the interview, Mr. Mullicane asked the detective if he had received a letter from his attorney, and the detective specifically told him that he was not going to talk to him through an attorney, that he was going to talk to him directly. And he also repeated that he would only get his rights until after he would only get his calls until after he was done speaking with him. The totality of these circumstances show that the police's actions were coercive, and that as a result of them, Mr. Mullicane gave an involuntary confession that was used to convict him of a third-strike offense and sentenced him to 90 years to life in prison. Now, the California Court of Appeal, although it decided that it was going to do a totality of circumstances test, made an unreasonable interpretation of the facts of two key facts in this case. One of them is that it determined that although Mr. Mullicane had been restricted in his calls, that they were only restricted as to Mr. Mullicane's place of employment, and that's not supported anywhere by the testimony of Detective Henderson, Mr. Mullicane, or of the jailer that night. All of them testified that Mr. Mullicane was, in fact, told that he had he could not make any phone calls. The other important error that the California Court of Appeal made was that they found that before Mr. Mullicane was questioned, he specifically expressly waived his rights. And in this case, Detective Henderson admitted that he did not obtain a waiver until after the end of the interview. Under Taylor v. Maddox and Wiggins v. Smith, when a court makes an error into key facts, that shows that their finding is unreasonable under the law, and this Court should give de novo review. Furthermore, for the totality of the circumstances test, you have to weigh all of the circumstances cumulatively. Here, these key errors show that the Court did not actually weigh correctly the coercion in this case and its effect on Mr. Mullicane's will. You don't dispute the fact that the Federal courts are required to give great deference to the State court, do you? No, I do not. However, it can be overcome. And in this case, it was overcome because the Court made these crucial mistakes. And so under either D-1 or D-2, this Court can give de novo review. Does he have a Federal constitutional right to make a phone call? Well, that's the other claim in this case, which is that under A51.5, yes, he does. And Ninth Circuit in Colorado What Supreme Court case says that? Well, the Supreme Court case says that the States can the clearly established Federal law is that States can create protected liberty interests that are protected by the due process clause of the 14th Amendment. That's the clearly established Federal law. And here, this Court in Carlo v. Chino found that California had created such a liberty interest in A51.5, applying either the Hewitt v. Helm test or the Sandin v. Conner test, because under either test, California placed restrictions on the conduct of a police officer. In fact, California made it a crime for a police officer to deprive a person of the calls and required that the calls be given immediately upon the person requesting them and only not give them if it was physically impossible. In Carlo, the Court found that this was sufficient to satisfy due process. But here, the facts do not support any finding that it was physically impossible to give to deprive Mr. Mullikin of any phone calls. The facts show that he was actually incarcerated for over two and a half hours, and at that time, there's no evidence that there was no reason that he could be denied his phone calls. Here again, the California Court of Appeal refused to treat it as a Federal constitutional offense and instead treated it as a statutory violation, refusing to get to the merits of the actual claim. And so we would assert that he didn't get an error of law. Well, I'm asserting that alternatively, that either the Court did not reach the merits and therefore this Court reviews it de novo, or if it did reach the merits, its refusal to apply the Federal law would be contrary to Federal law. Under either of these circumstances, Mr. Mullikin, the error was not harmless under the Brecht standard. Mr. Mullikin's confession was testified to at length by Detective Henderson at his trial. The testimony revealed that Mr. Mullikin had stated that he had washed the 10-year-old girl and helped her bathe and touched her. He also revealed that in the call that he had with her mother, Melinda, he had told her that he was a convicted sex offender and that he had a problem with young girls and teenage boys. The detective also testified that Mr. Mullikin's statements that night contradicted a prior phone call that he had had with him, which was used to show that Mr. Mullikin had previously lied. The prosecutor in this case in his closing arguments relied heavily on Mr. Mullikin's testimony and admitted touching that girl, that if you did not leave the victim – I'm sorry, let me reword it – that Mr. Mullikin's statements corroborated the victim's statements that she had been abused. The victim had actually been – the trial counsel's strategy was to attack the victim's credibility, showing that she had never revealed abuse to her mother even after she had received a phone call from Mr. Mullikin saying that he was a convicted sex offender and that she only disclosed the abuse after Mr. Mullikin – after she was interviewed by a DCFS social worker. He also showed that she had a reputation for lying and had produced witnesses to testify to that effect, including an expert that testified that she was coached. So here, on top of that, you also have the jury. The only readback requested by the jury was a readback of Mr. Mullikin's statement to Melinda where he told her that he was a convicted sex offender and that he had a problem with young girls. That information only came out through Mr. Mullikin's testimony. Nobody else testified to that except for Detective Henderson when he testified as to what Mr. Mullikin told him. So for these reasons, the fact that Mr. Mullikin's confession was used against him is not harmless error under Brett. And I know I have a lot of time, but unless there's a lot of questions, I'd like to reserve the rest of my time for rebuttal. Thank you very much. Thank you. Good morning. Deputy Attorney General David Vogt for Respondent. May it please the Court. Petitioner's statements to Detective Henderson were voluntary. The California Court of Appeals' rejection of that claim was not an unreasonable application of clearly established Federal law. The record shows that Petitioner's statements were not the product of his will being overborne. There were no violence or threats as stipulated to by Petitioner's counsel. The interview lasted about 90 minutes and was conducted in a police station. Petitioner was advised of his four Miranda rights prior to discussing the case with Detective Henderson, and after the interview was over, he signed a full written waiver. Petitioner testified. He never said that he did not want to talk to Detective Henderson. Petitioner believed that Detective Henderson. Did he say he wanted to make some phone calls? He did. He did. When he was finished booking, he asked to make phone calls. Does he have a right to make phone calls at that point? Under the State Statute 851.5, excuse me, Penal Code Section 851.5, it allows him three telephone calls immediately upon booking. And Ms. Orellana says that we have a case that says that that creates a due process liberty interest. Is that true? Well, if in Carlo versus the City of Chino, this Court addressed Penal Code Section 851.5 in the context of a Title 42, Section 1983 claim for money damages. However, in this case, it remains. So what did they say? They held that there is a liberty interest. They did, but that case is distinguishable from this case legally and factually. Legally, that case was not governed by the AEDPA, and this case is. And there are no Supreme Court cases I'm aware of or cited to by Petitioner that say, in essence, you are, you must be given three phone calls within hours of being there. Doesn't that factor into the totality of the circumstances analysis? I completely agree, Your Honor. And the court of appeal took the same position and considered it in terms of whether his statement was involved. Right. But didn't the court of appeal make an unreasonable determination of the facts when it said that the, that Officer Henderson had instructed the jailer to, not to allow him to make any calls to his workplace when, in fact, there's nothing in the record that supports that? I think the record supports that he was called. How does it point me to a place in the record where anybody testified that his phone calls were restricted only to his workplace? Detective Henderson told the jailers to deny him any telephone calls. That's correct. Right. Detective Henderson also testified. And the reason he didn't want to allow telephone calls is because a search warrant was being executed at Petitioner's business. I know he testified that's what he told the jailer. I don't want him to have any phone calls because we have a search warrant at his workplace. But that is not tantamount to what the Supreme, the California court of appeals held, which was that the phone call restriction was limited to calls to the workplace. It wasn't, was it? No, it was not. It was limited to only telephone calls. Isn't that contrary to what so you just conceded something that was directly in conflict with what the California court of appeals said? Well, I don't think that it's a, it's a, I don't think that's a factor that makes much difference in this case. Well, it does to me. Okay. Because he has a right to call his lawyer, doesn't he? And in fact, Officer Henderson had a letter that's from his lawyer, who's his representative, so it might as well be from Mullikane, saying don't talk to my client unless you call me first. Well, the right to counsel had not attached at that point in the proceeding. He's not been brought before a magistrate or charged. The right to counsel? He had counsel. He already had counsel. How could he, what do you mean his right to counsel? His right to counsel had not yet attached under, when you're talking about Miranda, that he had a lawyer. Yes, and he could have I think the blue brief makes a really good point when it talks about how the only reason why, I mean, a person who would go out and get a lawyer, I guess, evidencing some kind of notion that perhaps the situation could occur, that he would be arrested and taken down to jail, is someone who needed someone to invoke the right to counsel for him. He never invoked his right to counsel. He asked to make a telephone call, which is different from invoking his right to counsel. Right. He never invoked counsel. He never said he did not want to talk to Henderson, even after being advised of his rights. Okay, but when his counsel sent a letter saying don't talk to him unless you contact me, that's not on behalf of Mullikane? Your Honor, the United States Supreme Court case of Patterson v. Illinois cited in the brief, in that case, the right to counsel had attached. But, and the police were aware that that petitioner was represented by counsel. But the United States Supreme Court said that nonetheless, the police have the right to make an initial inquiry to see whether or not a defendant wants to have the advice of counsel and have counsel present, or whether he would rather speak to the police. And that is a right that's reserved for a defendant. It is not the attorney cannot assert his rights for him. So based on all the factors I discussed previously, it's clear that Petitioner's will was not overborne. In fact, if the police intended to overbear his will, they did a poor job. Because Petitioner denied molesting the victim. He denied that he had molested anyone for 20 years. And he merely admitted to that which was already public record, his extensive prior convictions. Petitioner. Well, he admitted to contacting the little girl in the bathroom, didn't he? He denied that he, he admitted that, but he denied any wrongdoing. Well, he admitted a very key fact, that he was in the bathroom with the little girl. That's not a good fact for him. But that fact would have been covered by both the victim and the victim's mother. Yeah, but they don't believe the victim and the victim's mother. That's a credibility contest. And it's pretty damning that he says, yes, he was in the bathroom with the little girl. That corroborates what the mother and the little girl have said, doesn't it? I don't think that that was a fact that would have been difficult to establish. How else would you have proven it? The little girl and the mother says he was in the bathroom. At trial, his position is that he wasn't in the bathroom. And now they have a contradictory statement at the police station that he was in the bathroom after all. I don't believe that his defense was that he was not in the bathroom. Wasn't it? I believe his defense was that he did not molest the little girl. I thought he denied ever having gone into the bathroom while she was taking a bath. Do I have it wrong? He did not testify, so I'm not sure how. So, I mean, without the statements to the police, I mean, a jury could see that he had broken off this relationship with Mollikane, and perhaps this was a vindictive kind of testimony. Well, I want to be clear. There were two statements. I'm sorry. Broken off his relationship with the mother. They'd broken up, right? Petitioner made two separate statements to Detective Henderson. The first one, Petitioner called Detective Henderson on the telephone, and they had a discussion. He said that the relationship had ended badly, criticized the victim's mother, claimed that he didn't know her last name, didn't know her telephone number, didn't know her address. He also related to Detective Henderson in this noncustodial discussion that he had advised the victim's mother that he was a registered sex offender and that he had a problem with children of the age of the victim in this case. So before you even have his custodial statement, you already have this very damaging noncustodial statement, a voluntary statement while he was on the telephone. I don't know how damaging it was because the police officer, when he reported it, he actually stated in his report, at this time there is no evidence of a crime. Well, that's because Petitioner denied entirely, you know, that anything had happened. But once there was additional evidence after the victim had gone to a counselor and a social worker and told them what had happened, there was then after that point, you know, a tremendous amount of evidence to go forward. In fact, when you look at the evidence that was presented in this case, it's clear that the custodial statement played a minor role. He denied molesting the victim or any child for 20 years. Apart from his statements, there was overwhelming evidence of his guilt, especially from the testimony of the 10-year-old victim. She was able to give a detailed description of how Petitioner molested her. Petitioner told her to take a shower, arrived in the bathroom while she was still naked, told her to wash herself, and then she was able to describe the way that Petitioner touched her, how many hands he used, what kind of motion he used when he touched her private parts, and for how long this went on. So if he's telling the truth, that's pretty damning evidence against him. Absolutely. They argue that she has a reputation as a liar, and furthermore that the mother and the defendant had a bad breakup, and that would explain why false reports were made. You know, those were, I think, fairly poor efforts to discredit this witness, and clearly the jury didn't. Why would they be poor efforts? They only established that she had a reputation for lying. Well, that's not a good thing. No. I didn't finish my sentence. I'm sorry, Your Honor. Equivalent to that of any 9- or 10-year-old. In other words, she might. You mean every 9- and 10-year-old lies? Of course. 9- and 10-year-olds lie occasionally. In this case, I think her teacher testified. I don't think that's of course. What depends on what they lie about, I believe. Well, that might be your belief. Do we have any evidence of that in the record? I don't think we have any evidence that children are truthful. All we have is evidence in the record that this particular girl had a reputation for lying. That's what was asserted. That's the evidence in the record. We don't have evidence as to every 9- and 10-year-old. I guess I'm not going to convince the Court on that point. No, you're not. No. However. You were going through why the evidence was overwhelming, and I think what you've got insofar as the little girl's statement. That's right. And the mother who had a bad breakup with the guy. So what else have you got? We've got the propensity evidence, Your Honor. And in this case, the jury was allowed to consider all of his prior convictions for sex offenses and his conviction for possessing and distributing child pornography, not only for some collateral issue, but to determine whether he committed this crime. Is it more likely that he committed this crime because he committed the same types of crimes in the past? I thought it was supposed to be beyond a reasonable doubt. The jury has to find that those crimes were committed by preponderance of the evidence. They can use those to determine whether or not the Petitioner was guilty, but they could not rely on that information exclusively. What if this is a man who knew he had a propensity for a sickness but was trying not to, was trying to avoid acting on those impulses? Could a jury have found that? That he acted on his impulses? No, that he was trying to avoid acting on those impulses. I don't see how he's trying to avoid that by having children come to his house and telling them to bathe in his house. If he believes a little girl. If he believes a little girl, her mother, Detective Henderson, in his noncustodial questioning. So, in conclusion, the Petitioner's statement was not a confession. It was a denial of the charged crimes. This shows that Petitioner wanted to talk to the police because he wanted to give them his version, he wanted to minimize his prior convictions, and he wanted to convince the police that he was innocent and go home. In fact, he testified that he believed he could end the interview at any time and merely go home. Penal Code Section 851.1 does not create a liberty interest. It is a matter of state law. And in any case, this Court has already held that Section 851.1 passes due process muster in and of itself. Here, Petitioner was only forced to wait about two and a half hours, and a petition for writ of habeas corpus should be denied. Thank you, Mr. Wilk. Ms. Arianna, back to you. Can I ask you a question? This was a three strikes case, and he got 90 years to life because it was a third strike. Yes. Does the new three strikes law affect his situation at all? No, Your Honor. Unfortunately, it doesn't affect him due to the nature of his charges. May I ask you a question? I'll give you a chance to rebut what Mr. Vogt says, but it seems to me there are two issues here, if I understand it right. One, whether the confession was voluntary or not. Yes. The California Court of Appeal found that under the totality of circumstances it was voluntary, right? Right. And we have to give that deference unless it's basically off the wall, right? More or less. Well, unless they make a clear error on the facts. Okay. In this case, they did. The second issue is whether there was a due process violation in not letting him make the phone calls. Right. Suppose we were, I'm just thinking out loud, suppose we were to say that we have no reason to upset the voluntariness finding of the California court, but we're concerned about the due process violation, they didn't give him his phone calls. What's the effect of that? Well, both claims stand independently. I'm sorry? Both claims stand independently. So even if this Court were to find that Mr. Mullikin's confession was not coursed, under the due process standard, because Mr. Mullikin was not provided with the due process required by the California statute, there was a violation. And here, again ---- Okay. Let's say you're right. Okay. It doesn't follow, then, that the confession has to be excluded, does it? I mean, if it's otherwise voluntary? Well, under the Beck standard, you have to see what the effect of the deprivation of the due process had on the trial. And here, the effect was that Mr. Mullikin gave a confession, because the reality would have been that had he been allowed to make calls, his testimony at the motion suppress hearing was that he intended to call his attorney. And as the Supreme Court has stated, any attorney worth his salt would tell a person not to speak to the police. So the reality here was that had he been able to make calls, he wouldn't have spoken to the detective. He would have either invoked his right or waited for his counsel to arrive. And so the confession is really the result of that deprivation of due process. And because it was allowed to come into evidence and used in the trial against him, then here there was a harm, and this Court should grant him relief. What was his defense at trial? His defense, the defense strategy at trial was to attack the victim's credibility, showing that even, basically there were only two people who were witnesses to what happened that day, Mr. Mullikin and the victim. Now, the mother never saw anything. Her testimony was that she came into the bathroom and saw Mr. Mullikin on the floor and her daughter in the bathtub. She didn't see Mr. Mullikin touching her daughter at all. And when she testified, she also didn't testify as to what Mr. Mullikin later told her over the phone. Amanda was the only person who testified as to what actually happened in the bathroom when Mr. Mullikin touched her. And so the defense strategy was to attack her credibility by showing that she had not told her mother about the incident at the time. She also never told her mother about the incident later when she asked her about it after she received the phone call, and that Amanda had a reputation for lying amongst her family, her friends, and her school. And again, they called an expert who testified that her testimony seemed coached, and the trial counsel really questioned the fact that here she had been questioned in private outside of the presence of her mother by a social worker, and that this social worker did not testify at the trial, and that the testimony that she testified in was not true. And there was no tape made of this interview. I want to also talk about this propensity evidence. As my colleague stated here, you know, it is propensity evidence, but it cannot be used to convict my client of this crime. You have to prove this specific crime beyond a reasonable doubt without the propensity evidence. So really the evidence against Mr. Mullikin was weak. And again, the testimony that did get used against him was Detective Henderson's statements from the jury. The readback the jury requested was not, what did Amanda say? What did we hear from her? What did we hear from the mother? It was specifically, what did Mr. Mullikin tell Detective Henderson? And the damaging statement was, I'm a convicted sex offender, and I have a problem with young girls and teenage boys. Now, getting to the 1983 action. Yes, Carlo v. Chino was a 1983 case for money damage. However, the warden has not ceded any law that says that once a court finds that there's a state-created liberty interest, that that liberty interest is restricted to a 1983 action. In fact, the case of Swarthout v. Moore, or Swarthout v. Cook, the court found that it is an actual Christian and federal habeas, and that in federal habeas in that case, that California had created a right to parole, and that it was protected by due process. So here the fact that Carlo v. Chino is a 1983 case does not mean that in this case it could not be applied to Mr. Mullikin's criminal action. And if there are no more questions? So the little girl told her story for the first time to the social worker? Yes. And the government did not call the social worker as a witness? That's correct, Your Honor. Okay. Thanks. Thank you. Thank you. Thank you. The case just argued is submitted. We'll go to the next one.
judges: George, Silverman, Wardlaw